UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GREGORY J.[1],

                         Plaintiff,

        v.                                          Case # 19-CV-1615-FPG
                                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

**INTRODUCTION**

Plaintiff Gregory J. brings this action pursuant to Title II of the Social Security Act seeking review of the denial of his application for Disability Insurance Benefits.

Plaintiff protectively applied for benefits on May 18, 2016, alleging disability due to a variety of physical and mental impairments. Tr.[2] 80, 145, 172. After the Social Security Administration ("SSA") denied his application, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 32-63. On October 18, 2018, the ALJ issued an unfavorable decision. Tr. 9-25. After the Appeals Council denied Plaintiff's request for review, the SSA's decision became final and Plaintiff appealed to this Court. ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 10. For the following reasons, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security opinions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify the plaintiff using only the first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 4.

1

**LEGAL STANDARD**

**I.  District Court Review**

When a district court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citations omitted).  The Commissioner's decision is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.  Disability Standard**

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of the claimant's age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Lesterhuis v. Colvin*, 805 F.3d 83, 85 n.2 (2d Cir. 2015); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's benefits application using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. Tr. 14. At step two, the ALJ assessed Plaintiff with several severe physical and mental impairments, including, as relevant here, major depressive disorder and a generalized anxiety disorder. Tr. 15. At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the criteria of any Listings impairment. Tr. 16. The ALJ then determined Plaintiff's RFC. Tr. 18. As relevant here, the ALJ determined that Plaintiff could frequently understand, remember, and carry out simple instructions, and could occasionally interact appropriately with supervisors and coworkers, but needed to avoid contact with the public. Tr. 18. Plaintiff could tolerate few changes in a routine work setting, would be off task for five percent of the workday due to attention and concentration lapses, and would miss work once a month. Tr. 18. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 24. At step five, the ALJ found that Plaintiff could adjust to other work that exists in significant numbers in the national economy. Tr. 24. Accordingly, the ALJ found that Plaintiff was not disabled. Tr. 25.

### III. Analysis

Among other arguments that the Court does not reach, Plaintiff argues that the ALJ violated the treating physician rule in evaluating the opinions of several treating sources. The Court finds merit in Plaintiff's argument that the ALJ failed to properly apply the treating physician rule to his analysis of the jointly-signed opinion of treating physician Horacio Capote, M.D., and Physician Assistant Nicole Miller. Tr. 770.

The Capote/Miller opinion addressed Plaintiff's mental limitations. Dr. Capote and PA Miller indicated that Plaintiff had a marked limitation in his ability to understand, remember, or apply information; a moderate limitation in his ability to interact with others; a marked limitation in his ability to concentrate, persist, or maintain pace; and a moderate limitation in his ability to adapt or manage himself. Tr. 773. Additionally, they opined that Plaintiff would never be able to maintain attention for a two hour segment, work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, or deal with normal work stress. Tr. 774. They further opined that Plaintiff would be anticipated to miss work more than four days per month. Tr. 774. They felt that Plaintiff's difficulty with focus and attention, interpersonal conflict, and easy agitation would prevent him from working a regular job on a sustained basis. Tr. 770.

The ALJ gave "some weight" to this opinion. Tr. 23. However, as a treating physician's opinion, it was entitled to controlling weight as long as it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (second brackets in original) (quoting 20 C.F.R. § 404.1527(c)(2)). An ALJ may discount a treating physician's opinion if it does not meet this standard but must give "good reasons" for doing so. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Generally, "when assigning less than 'controlling weight' to the treating physician's opinion, the ALJ must 'explicitly consider' the four factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008)." *Guerra v. Saul*, 778 F.

App'x 75, 76 (2d Cir. 2019) (summary order) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)).  These factors are "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion;  (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Estrella*, 925 F.3d at 96 (quotation marks, citation, and brackets omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  An ALJ commits procedural error by failing to explicitly consider each of these factors, but the error will be considered harmless and the reviewing court will affirm if "a searching review of the record shows that the ALJ has provided 'good reasons' for its weight assessment." *Guerra*, 778 F. App'x at 77; *see also Estella*, 925 F.3d at 96; *Connolly v. Berryhill,* No. 3:18-cv-00185 (MPS), 2020 U.S. Dist. LEXIS 27018, at *9 (D. Conn. Feb. 18, 2020) (explaining that the "[f]ailure to explicitly consider every *Burgess* factor is . . . not fatal . . . if the ALJ has nonetheless provided 'good reasons' for [her] weight assessment, such that the substance of the treating physician rule was not traversed."  (internal citations and quotation marks omitted))

 Here, the ALJ did not discuss all of the *Burgess* factors, and to the extent that he touched upon some of them, they do not collectively support giving only some weight to the Capote/Miller opinion.  The ALJ did not discuss the first factor, the frequency, length, nature, and extent of treatment.  As to the second and third factors, the amount of medical evidence supporting the opinion and the consistency of the opinion with the remaining medical evidence, the ALJ noted that the opinion was in a checkbox form unaccompanied by detailed medical explanations, but found that the opinion was "largely consistent" with Plaintiff's other medical records for the period under consideration.  Tr. 23.  As to the fourth factor, the ALJ noted that Dr. Capote was a treating psychiatrist, which, if anything, would support giving more weight to his mental health opinion.

The only factor which could arguably support giving diminished weight to the Capote/Miller opinion was the second factor, the amount of medical evidence supporting the opinion, because the ALJ found that the checkbox opinion was unaccompanied by detailed medical explanations. Tr. 23. Some cases in this district have held that the fact that a treating opinion is in a checkbox form unaccompanied by supportive clinical findings is a good reason for discounting the opinion, particularly where the opinion is inconsistent with the findings reflected in the doctor's treatment notes. *See, e.g.*, *Dereu v. Saul*, No. 19-CV-0164L, 2020 U.S. Dist. LEXIS 161609, at *8 (W.D.N.Y. Sep. 3, 2020) (While "an ALJ may not reject a medical opinion out of hand simply because it appears on a checkbox form, a lack of supportive clinical findings in any medical opinion—a deficiency to which checkbox forms are particularly vulnerable—is relevant to the ALJ's weighing of that opinion."). Other cases, however, have held that this reason is not good enough. *See, e.g.*, *Allen v. Comm'r of Soc. Sec.*, No. 18-CV-6168L, 2019 U.S. Dist. LEXIS 172896, at *11 (W.D.N.Y. Oct. 4, 2019) (collecting cases).

Here, the ALJ did not indicate that the Capote/Miller opinion was inconsistent with those providers' treatment notes, and he specifically indicated that the opinion was consistent with the other medical records. The only other reasons the ALJ gave for assigning diminished weight to the opinion were unhelpfully based on "the reasons set forth above." Tr. 23. But, "applicable law—both regulatory and case law—requires a much more explicit comparison of any alleged inconsistencies between a treating source opinion and the medical evidence." *Lewis v. Comm'r of Soc. Sec.*, No. 1:18-cv-1279-TPK, 2020 U.S. Dist. LEXIS 19249, at *21 (W.D.N.Y. Feb. 5, 2020).

Any error in the ALJ's analysis of the Capote/Miller opinion cannot be said to be harmless. Although the ALJ attempted to accommodate some of Plaintiff's mental limitations in his RFC determination, the RFC was still less restrictive than the Capote/Miller opinion. Most notably, the

ALJ rejected the Capote/Miller opinion's finding that Plaintiff would miss four days of work per month and instead found that he would only miss one day of work per month.  Tr. 18, 23.  Additionally, the Capote/Miller opinion indicated that Plaintiff could not maintain attention for a two-hour segment during the day, but the ALJ found that Plaintiff would be off task for only five percent of the workday, which amounts to about 24 minutes.[3]  It is not clear how for how long Plaintiff *could* maintain attention within a two-hour period and whether his daily distractions would amount to more than 24 minutes, either within a two-hour period or per day.  "Because [the Capote/Miller] opinion manifestly described limitations beyond what the ALJ determined in [his] RFC finding, . . . the ALJ's failure to properly weigh [the Capote/Miller] opinion and to furnish good reasons for rejecting it cannot be said to be harmless error."  *Wilson v. Saul*, No. 19-CV-0409L, 2020 U.S. Dist. LEXIS 116788, at *8 (W.D.N.Y. July 2, 2020).

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 9, is GRANTED, the Commissioner's motion, ECF No. 10, is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.  The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 22, 2021
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court

---

[3] The ALJ did not give significant weight to any medical opinion, and it is unclear how he developed this highly specific off task limitation without a medical professional's insight.  *See, e.g.*, *Kathryn D. v. Comm'r of Soc. Sec.*, No. 19-CV-1550-LJV, 2021 U.S. Dist. LEXIS 10211, at *16 (W.D.N.Y. Jan. 20, 2021) ("Therefore, and because all medical opinions were given 'limited weight,' the ALJ necessarily relied on her own lay judgment to evaluate the medical records and formulate the RFC.  It is otherwise unclear to the Court how the ALJ, who is not a medical professional, came up with this highly specific RFC determination." (citation and internal quotation marks omitted)).